# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:      *

JARED A. RUMER and      *     CHAPTER 7

ELIZABETH A. RUMER, f/k/a      *

ELIZABETH ANN LITTLE,      *

         Debtors      *

         *     CASE NO. 1:10-bk-03694MDF

JARED A. RUMER and      *

ELIZABETH A. RUMER, f/k/a      *

ELIZABETH ANN LITTLE,      *

         Plaintiffs      *

         *

      v.      *     ADV. NO. 1:11-ap-00232MDF

         *

AMERICAN EDUCATIONAL      *

SERVICES, AFFILIATED COMPUTER      *

SERVICES, PENNSYLVANIA HIGHER      *

EDUCATION ASSISTANCE AGENCY,      *

J.P. MORGAN CHASE, N.A.,      *

CITIBANK, N.A., Trustee for Student      *

Loan Corp. o/b/o American Student      *

Assistance, KEYBANK, CALIFORNIA      *

STUDENT AID COMMISSION,      *

NATIONAL COLLEGIATE TRUST,      *

SALLIE MAE, UNITED STATES      *

DEPARTMENT OF EDUCATION,      *

and PNC BANK,      *

         Defendants      *

## OPINION

### I. Introduction

Jared and Elizabeth Rumer ("Debtors") filed their bankruptcy petition and included on their schedule of creditors holding unsecured nonpriority claims fourteen claims related to student loan debt. Debtors now allege that the loans upon which the claims arose are not "qualified educational loans" and thus, are subject to discharge under 11 U.S.C § 1328(a).

Alternatively, Debtors argue that excepting the loans from discharge under 11 U.S.C. § 523(a)(8) will impose an undue hardship on Debtors and their dependent child.

Before me are motions for summary judgment filed by three of the answering Defendants: Loan Science ("Loan Science") as servicer for Affiliated Computer Services ("ACS"); JP Morgan Chase ("Chase"); and the United States Department of Education (the "USDE"). These Defendants seek entry of judgment: (1) that their loans are "educational loans" within the purview of § 523(a)(8), and (2) that repayment of their loans will not be an "undue hardship" for Debtors. Debtors have filed a motion for summary judgment on the same issues against the following defendants: The Educational Resource Institute ("TERI") as assignee of PNC Bank; Keybank, National Collegiate Trust ("NCT"); and Chase (collectively "Summary Judgment Respondents"). For the reasons discussed below, Debtors' motion for summary judgment will be denied, and the motions of Loan Science, Chase, and the USDE will be granted in part and denied in part.

## II. Procedural History

On April 30, 2010, Debtors filed a bankruptcy petition under Chapter 13 and scheduled $456,221 in unsecured student loans. On April 12, 2011, Debtors filed the above-captioned complaint requesting the Court to determine that their student loans were subject to discharge. The following entities filed answers to the complaint: Keybank, Loan Science, Chase, National Collegiate Trust ("NCT"), the USDE, TERI, and Educational Credit Management Corporation ("ECMC") as the assignee of two named Defendants – the Pennsylvania Higher Education

2

Assistance Agency ("PHEAA") and the California Student Aid Commission ("CSAC").[1] On

May 12, 2011, Debtors and Sallie Mae filed a Stipulation in which they agreed that Sallie Mae's

claim in the amount of $885.50 was dischargeable.

### III. Background

*A. Debtors' educational loans and expenses*

On May 20, 2010, Debtors filed their schedule of creditors holding unsecured nonpriority

claims, identifying the following claims as "student loans":

| Creditor | Incurred by | Date claim incurred | Amount |
|---|---|---|---|
| ACS/CLC Trust II | Husband | 2006 | $ 3,313 |
| AES | Wife | 2005 | $ 3,312 |
| AES | Husband | 2001-02 | $ 5,002 |
| AES/Keybank | Wife | 2004 | $ 16,551 |
| AES/NCT | Wife | 2004-06 | $ 81,300 |
| AES/NCT | Husband | 2006 | $ 35,490 |
| AES/PHEAA | Husband | 2004-07 | $ 27,000 |
| AES/PNC | Husband | [No date provided] | $ 23,798 |
| AES/US Nat'l Bank | Wife | 2002 and 2004 | $ 3,816 |
| Chase | Husband | 2007 | $ 26,364 |
| Education Finance Partner[2] | Joint | 2006 | $176,046 |
| Sallie Mae | Wife | 2004 - 09 | $ 40,000 |
| Sallie Mae | Husband | 2003 - 07 | $ 9,611 |
| SLC Conduit | Husband | 2007 | $ 4,618 |
| | | **TOTAL** | **$456,221** |

Of the total debt reported on Debtors' schedules, $135,196 is attributable to educational

loans for Jared Rumer ("Jared") and $144,979 is attributable to educational loans for Elizabeth

Rumer ("Elizabeth"). Debtors also reported joint educational loan debt of $176,046.

---

[1]Citibank NA transferred its claim to ECMC on September 13, 2010 prior to the filing of the adversary complaint on April 12, 2011. On June 21, 2011, a default judgment was entered against Defendant Citibank, at which time it no longer held a claim against Debtors.

[2]According to the Affidavit of Jeffrey Rudolph filed in support of Loan Science' motion for summary judgment, Loan Science is the master servicer of the loan held by Education Finance Partners Warehouse Funding 3 LLC and serviced by ACS.

The amount of debt attributable to educational loans as reported in Debtors' schedules is similar to the total amount included in the proofs of claims filed in the case. However, the current holders of these obligations are not identical to the creditors reported on Debtors' schedule of non-priority unsecured creditors. Lenders and assignees who have filed proofs of claims for student loan debt are as follows:

| Creditor | Assignor | Incurred by | Amount |
|---|---|---|---|
| ECMC | Citibank NA | Jared | $ 4,645.71 |
| Chase | N/A | Both Debtors | $ 26,300.27 |
| Loan Science | N/A | Jared | $178,873.81 |
| Keybank | N/A | Elizabeth | $ 6,591.43 |
| Keybank | N/A | Elizabeth | $ 9,977.44 |
| Keybank | N/A | Elizabeth | $ 6,711.78 |
| ECMC (CLC) | CSAC | Elizabeth | $ 3,531.57 |
| ECMC | PNC(AES/PHEAA) | Elizabeth | $ 3,771.62 |
| ECMC | AES/PHEAA | Elizabeth | $ 3,855.30 |
| Sallie Mae/USAF[3] | N/A | Jared | $ 8,773.98 |
| Sallie Mae/USAF | N/A | Elizabeth | $ 7,044.51 |
| Sallie Mae/USAF | N/A | Elizabeth | $ 3,984.92 |
| Sallie Mae/USAF | N/A | Elizabeth | $ 11,261.71 |
| National Collegiate Trust (First Marblehead Corp.) | N/A | Both Debtors | $118,690.94 |
| Sallie Mae/USAF | N/A | Elizabeth | $ 4,294.20 |
| Sallie Mae/USDE | N/A | Elizabeth | $ 8,243.57 |
| USDE | N/A | Jared | $ 9,321.31 |
| Sallie Mae | N/A | Jared | $ 846.98 |
| TERI/PNC | N/A | Both Debtors | $ 24,707.21 |
| | | **Total** | **$441,428.26** |

---

[3]Sallie Mae filed seven proofs of claim in the within case, but did not file an answer to the Debtors' complaint. Debtors' did not take a default judgment against Sallie Mae. The record is unclear whether its interests are otherwise represented in this proceeding.

4

*B. Debtors' educational history*

Jared is 29 years of age. He received a bachelor's degree in business administration from Shippensburg University ("Shippensburg") in 2007. Between August 2001 and July 2008 Jared attended the Pennsylvania College of Technology ("PCT"), Indiana University of Pennsylvania ("IUP"), Lindenwood University (Missouri) ("Lindenwood"), Harrisburg Area Community College ("HACC"), Shippensburg and the University of Phoenix ("Phoenix")[4].

Elizabeth is 27 years of age. She received a bachelor's degree in business from Phoenix in 2010. In the course of her post-secondary education, she also attended IUP, Lindenwood, HACC, and Western International University ("WIU").

*C. Debtors' current income and expenses*

In the course of their bankruptcy case, Debtors filed schedules describing their monthly household income and expenses. In Amended Schedule I dated December 17, 2010, Debtors stated that Elizabeth was employed as a human resources specialist for the United States Department of Defense and her monthly net income was $3086. In Amended Schedule I, Debtors indicated that Jared obtained "seasonal employment," but the schedule included no information on his income. When Debtors filed an Amended Schedule J on December 17, 2010, they reported current monthly expenses totaling $3577.16. On their Amended Schedule I, Debtors reported monthly income of $3086.68, creating a monthly deficit of $490.48.

In the answers to interrogatories filed in the instant adversary, Debtors state that Jared obtained full-time employment at Plant Site Logistics in March 2011. They also report that

---

[4]Jared obtained his bachelor's degree prior to enrolling at Phoenix for post-graduate work. He took courses at Phoenix but did not obtain a degree.

5

Elizabeth's current annual salary is $74,872 and that Jared's current annual salary is $34,008. Debtors omitted one significant expense on Amended Schedule J – the cost of day care for their 18-month-old child, which Jared stated was $568 per month. There is no information in the record on whether Debtors still have a monthly deficit in their household budget when Jared's income is considered and the day care expenses are included.

Debtors currently reside in a home in Newville, Pennsylvania that they rent from Elizabeth's aunt and uncle. Newville is midway between Debtors' respective places of employment. Jared and Elizabeth each commute 45 to 60 minutes one way each day. At deposition, Jared described Debtors' agreement with their landlords as a "rent-to-own" arrangement, with the purchase price of the home being $168,000. He testified, however, that no portion of the $834 per month that they pay as rent is deducted from the principal of the purchase price. The home is a ranch style structure consisting of 1264 square feet of living space situated on approximately one acre of land. It has three bedrooms and two bathrooms.

Jared further testified that he has attempted to earn additional income through a shooting "business." In pursuit of this venture, he attended shooting competitions in various locations as far away as Texas, where he paid entry fees of as much as $1000 to enable him to compete for cash prizes. He has no corporate or individual sponsors for his involvement in these events, although friends and family have supported him at various times by subsidizing his entry fees. This venture has never been profitable and in 2010 he claimed a business loss of $21,797. In 2008 Debtors received a tax refund of $4689, and in 2009 they received a refund of $7272.

6

*D. Debtors' efforts to repay their student loans*

The record contains few details regarding the efforts of either Debtor to repay any of the defendants in this case. Jared testified at deposition that no portion of Debtors' tax refunds had ever been used to pay student loans. With its motion for summary judgment, Defendant Loan Science submitted an affidavit stating that as of the petition date, the outstanding balance of the debt serviced by Loan Science was $183,675.25, with monthly payments due in the amount of $1509.75. The affidavit further stated that "Debtors have not made a payment on account of [this] obligation since September 9, 2008." (Loan Science Motion for Summary Judgment, Docket Item #26, Exhibit A.) The language of the affidavit is unclear as to whether payments were made to Loan Science prior to September 9, 2008.

With its motion for summary judgment, Defendant Chase submitted an affidavit stating that the original amount borrowed by Debtors was $21,593.45, with an unpaid balance on the date of the petition of $28,438.59. (Chase Motion for Summary Judgment, Docket Item #46, Exhibit A.) The affidavit further stated that monthly payments were due on the obligation in the amount of $180.74, and that as of the date of the affidavit, Debtors had failed to make any payments whatsoever on the obligation.

With its motion for summary judgment, Defendant USDE submitted an affidavit stating that the original amount borrowed by Jared through the Federal Family Education Loan Program was $8824,[5] while the original amount borrowed by Elizabeth through the same program was

---

[5]The affidavit further stated that Jared obtained loans on two occasions, the first on August 1, 2007 in the amount of $4500, and the second on July 18, 2008 in the amount of $4324.

$7813.[6]  As of the petition date, the unpaid balance on Jared's loan was $10,196.40, while

Elizabeth's unpaid balance was $8,797.73.  (USDE Motion for Summary Judgment, Docket Item

#48, Exhibit 1.)  The affidavit provided no information regarding the amount of the monthly

payments, or whether either Debtor had previously made any payments on their obligations.

Jared testified at deposition that he had contacted Defendants AES and Loan Science to

attempt to reduce his monthly payment obligation on the loans they service.  He testified that

Loan Science was unable to offer any assistance, while AES offered to send him information

regarding forbearance agreements.  He further testified that he had researched Debtors' eligibility

for the William D. Ford Federal Direct Loan Program ("the Ford Program"),[7] but found that

Debtors' income exceeded the maximum allowable for participation. He provided no information

regarding efforts to contact Defendants Chase or USDE to negotiate more favorable terms of

repayment for these loans.

### E.  Debtors' Prospects for Future Earnings

Both Debtors are in good health, neither suffering from any form of impairment or

disability that would prevent them from maximizing personal earnings in the future.  Debtors'

responsibilities as parents of a small child may affect their ability to obtain second jobs.

---

[6]Elizabeth obtained two loans, the first on October 22, 2006 in the amount of $2438 and
the second on March 6, 2009 in the amount of $4375.

[7]The Ford Program permits a student loan debtor to pay twenty percent of the difference
between his adjusted gross income and the poverty level for his family size, or the amount the
debtor would pay if the debt were repaid in twelve years, whichever is less. Under the program,
the borrower's monthly repayment amount is adjusted each year to reflect any changes in these
factors. The borrower's repayments may also be adjusted during the year based on special
circumstances. See 34 C.F.R. § 685.209(c)(3). At the end of the twenty-five year payment period,
any remaining loan balance would be cancelled by the Secretary of Education. *In re Tirch*, 409
F.3d 677, 682 (6th Cir. 2005).

8

# IV. Discussion

*A. Standards for summary judgment*

A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts" such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ .P. 56(c), incorporated by Fed. R. Bankr. P. 7056. In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *See Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 682, 687 n.2 (3d Cir. 2012). "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party." *Fisher v. Matthews*, 792 F.Supp.2d 745, 770 -771 (M.D. Pa. 2011) (citing *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988)).

To prosecute a motion for summary judgment, "[t]he moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that 'the nonmoving party has failed to make a sufficient showing of an essential element of her case.'" *Fisher*, 792 F.Supp.2d at 771 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57 (1986). "A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials

9

of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."

*Id.*

### B. Dischargeability under 11 U.S.C. § 523(a)(8)

Under 11 U.S.C. § 523(a)(8), educational loan debt cannot be discharged unless requiring

a debtor to repay the debt will impose an "undue hardship" on the debtor or the debtor's

dependents. The particular types of educational loans subject to this rule are:

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8).

Debtors allege that they are entitled to summary judgment because the loans held by the

Summary Judgment Respondents do not qualify for protection under § 523(a)(8). I will address

this aspect of Debtors' motion first.

> 1. *Whether the TERI, Keybank, NCT or Chase loans qualify as "educational loans" under § 523(a)(8)*

Section 523(a)(8) protects four categories of educational loans from discharge: (1) loans

made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially

or fully funded by a government unit or nonprofit institution; (3) loans received as an educational

benefit, scholarship, or stipend; and (4) any "qualified educational loan" as that term is defined in

the Internal Revenue Code. *In re Weldon*, 2008 WL 4527654, *2 (Bankr. W.D. Wash. October

1, 2008). In their motion for summary judgment, Debtors contend that the loans they obtained

from the Summary Judgment Respondents do not fall within any of these categories.

10

The cases interpreting § 523(a)(8) have held that the initial burden is on the lender to establish the existence of the debt and to demonstrate that the debt is included in one of the four categories enumerated in § 523(a)(8). *Raymond v. Northwest Educ. Loan Ass'n (In re Raymond)*, 169 B.R. 67, 69-70 (Bankr. W.D. Wash. 1994), *cited in In re Weldon*, at *2; *The Cadle Co. v. Webb (In re Webb)*, 132 B.R. 199, 201 (Bankr. M.D. Fla. 1991)). *Accord In re Stone*, 199 B.R. 753, 769 (Bankr. N.D. Ala. 1996); *In re Bachner*, 165 B.R. 875, 881 (Bankr. N.D. Ill. 1994); *In re Phillips*, 161 B.R. 945 (Bankr. N.D. Ohio 1993); *In re Ealy*, 78 B.R. 897 (Bankr. C.D. Ill. 1987); *In re Keenan*, 53 B.R. 913 (Bankr. D. Conn. 1985) (placing burden of proving that loan qualifies as a student loan "is consistent with the parties' relative access to information").[8] Thus, by asserting that the Summary Judgment Respondents have failed to make a sufficient showing that their respective loans are properly classified as "educational loans," Debtors have satisfied their initial burden under *Celotex*.

In their briefs responding to Debtors' motion, TERI, NCT, Keybank and Chase invoke the language of § 523(a)(8)(B) which protects from discharge "qualified educational loans" as defined by 26 U.S.C. § 221(d)(1). In turn, section 221(d)(1) of title 26 provides as follows:

> (1) Qualified education loan. The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay *qualified higher education expenses*–
>
>> a. which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,

---

[8]But see *In re Skipworth*, 2010 WL 1417964 (Bankr. N.D. Ala. April 1, 2010) (without discussing burden allocation, court concludes that debtor has failed to meet his burden of proof on issue of whether a loan used for bar review course was not a student loan); *In re Carow*, 2011 WL 802847 (Bankr. D. N.D. March 2, 2011) ("debtor failed to establish that the debt to Chase is not an obligation to repay funds received as an 'educational benefit'").

11

> b. which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
>
> c. which are attributable to education furnished during a period during which the recipient was an eligible student.

26 U.S.C. § 221(d)(1) (italics added).

"The term 'qualified higher education expenses' is further defined as *the cost of attendance ... at an eligible educational institution.*' An 'eligible educational institution' . . . is that which is described and eligible to participate in a program under Title IV of the Higher Education Act of 1965, as amended. 26 U.S.C. § 25A(f)(2)." *In re Wills*, 2010 WL 1688221, *7 (S.D. Ind. April 23, 2010) (citations to the Internal Revenue Code omitted) (emphasis added).

Each of the colleges and universities attended by Jared and Elizabeth were Title IV eligible when the loans were made.[9] Nevertheless, Debtors advocate a narrow interpretation of the phrase "cost of attendance," and assert that summary judgment is appropriate because the Summary Judgment Respondents have not offered proof that the proceeds of the loans were used by Debtors to pay for "costs of attendance" such as tuition, books, room and board, etc.

Debtors' narrow construction of this term conflicts with the interpretation of this phrase by bankruptcy courts addressing this issue. Most courts, including the Courts of Appeals for the Fifth and Seventh Circuits, have analyzed whether a loan is a qualified educational expense by focusing on the stated purpose for the loan when it was obtained, rather than how the proceeds were actually used by the borrower. *See In re Sokolik*, 635 F.3d 261, 266 (7th Cir. 2011); *Murphy v. Pennsylvania Higher Educ. Assistance Agency (In re Murphy)*, 282 F.3d 868, 870 (5th

---

[9]The Court takes judicial notice of the information contained at https://fafsa.ed.gov, which contains a list of all Title IV eligible institutions in the United States. Each of the institutions attended by Debtors are included on that list.

Cir. 2002). These courts determine the educational nature of the loan by focusing on the substance of the transaction creating the obligation. The "substance of the transaction test" recognizes that the purpose of § 523(a)(8) is to exempt entities that make educational loans from the effect of a borrower's bankruptcy discharge. *Tift County Hospital v. Nies (In re Nies)*, 334 B.R. 495, 501 (Bankr. D. Mass. 2005). "Section 523(a)(8) does not expressly state that only loans "used for tuition" are nondischargeable. Nor does it define educational loans as excluding living or social expenses." *Murphy*, 282 F.3d at 870. *See also In re Sokolik*, 635 F.3d at 266; *In re Noland*, 2010 WL 1416788, *3-4 (Bankr. D. Neb. March 30, 2010); *In re Hayes*, 2006 WL 4481999, *4 (Bankr. D. Md. October 11, 2006); *In re Nies*, 334 B.R. at 502; *In re Riley*, 2005 WL 6443619, *5 (Bankr. N.D. Tex. June 17, 2005); *In re Hamblin*, 277 B.R. 676 (Bankr. S.D. Miss. 2002); *In re Roberts*, 149 B.R. 547, 551 (C.D. Ill. 1993); *Barth v. Wisconsin Higher Educ. Corp. (In re Barth)*, 86 B.R. 146, 148 (Bankr. W.D. Wis. 1988). Section 523(a)(8) is concerned with the circumstances surrounding the origination of the loan, rather than what benefits the debtor may have derived. *In re Willis*, 2010 WL 1688221 (S.D. Ind. April 23, 2010). Thus, "rather than trying to determine whether a computer purchased with loan money was used for schoolwork, personal use or some combination of both," a bankruptcy court reviewing a § 523(a)(8) case "need only ask whether the lender's agreement with the borrower was predicated on the borrower being a student who needed financial support to get through school." *In re Sokolik*, 635 F.3d at 266.

In the matter before me, there is no genuine dispute that: 1) each of the Summary Judgment Respondents were providers of educational loans when Debtors applied; 2) Debtors applied to each lender in its capacity as a student loan lender; and 3) each loan was entered into

13

when Debtors were college students. Accordingly, there is no genuine dispute that each of the loans at issue in this matter were "educational loans" for purposes of § 523(a)(8). Therefore, on the issue of whether the loans are educational loans within the purview of § 523(a)(8), Debtors' motion for summary judgment will be denied, and summary judgment will be granted in favor of Loan Science, Chase, and the USDE .[10]

## 2. Whether requiring repayment of the loans will create an undue hardship

Section 523(a)(8) does not define the term "undue hardship." Therefore, the courts must review the facts of each case to determine whether the circumstances justify discharge of the debt. *In re Boston,* 119 B.R. 162, 164 (Bankr. W.D. Ark. 1990). Despite the fact-intensive nature of the "undue hardship" inquiry, summary judgment may nonetheless be appropriate where the relevant facts are uncontroverted, and no questions remain on controlling legal issues. *In re Rice*, 78 F.3d 1144, 1148 (6th Cir. 1996).

In *In re Faish*, 72 F.3d 298 (3d Cir. 1995), the Third Circuit adopted the three-pronged test set forth in *Brunner v. New York State Higher Education Services Corp*., 831 F.2d 395 (2d Cir. 1987) to determine whether forced repayment of student loan debt will be an "undue hardship" on a debtor. Under this test, "undue hardship" is dependent upon three factors: (1) whether a debtor is able to maintain a "minimal" standard of living for themselves and their dependents if forced to repay the loans; (2) whether additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3)

---

[10]Debtors have not requested summary judgment against each and every Defendant on this issue, and only Loan Science, Chase and the USDE requested summary judgment in their favor on this issue. However, although not raised by all Defendants, I conclude that each loan for which a proof of claim was filed by one of the within Defendants is an "educational loan" entitled to the protections of § 523(a)(8) if there is no showing of undue hardship.

14

whether the debtor has made a good faith effort to repay the loans. *In re Faish,* 72 F.3d at

304-05 (citing *In re Brunner*, 831 F.2d at 396).[11]  A debtor must prove all three elements of the

test by a preponderance of the evidence in order to prevail in an action under § 523(a)(8).  *In re*

*Faish,* 72 F.3d at 306.  If any of the three prongs are not met, the student loan cannot be

discharged. *Id.*  "Moreover, this test must be strictly construed: equitable concerns or other

extraneous factors not contemplated by the test may not be imported into the analysis of 'undue

hardship.'" *In re Brightful*, 267 F.3d 324, 328 (3d Cir. 2001) (citation omitted).

As illustrated by the *Faish* and *Brightful* cases, the standard that the Debtors *sub judice*

must meet to discharge their student loans is high and difficult to meet.  In order to grant

Debtors' motion for summary judgment, the record must show that Debtors have met all three

elements of the *Faish* test.  If the record does not support any one of those elements, then

Debtors' motion must be denied.  Conversely, if the record shows conclusively that Debtors

would be unable to prove that compulsory repayment of their student loans would constitute an

undue hardship, then summary judgment must be granted in favor of the lenders.[12]

---

[11]In *Faish*, the debtor was a single mother earning $27,000 a year with student loans of
approximately $32,000.00.  She did not own a car, she rented a home in a low-income
neighborhood, and she suffered from Crohn's disease and other ailments. The Third Circuit
observed that notwithstanding her personal difficulties and health challenges, with some lifestyle
modifications Faish would be able to repay her student loan.  Similarly, in *Brightful*, the school
loans of the  debtor, a single mother with emotional problems who lived with her sister and
earned $8500 the year she declared bankruptcy, were not discharged because she could not prove
"a total incapacity . . . in the future to pay [her] debts for reasons not within [her] control." *Id.*
(citing *In re Faish*, 72 F.3d at 307).

[12]The courts are not in agreement regarding the question of whether repayment of one
student loan may be an undue hardship to a debtor while repayment of another student loan
would not.  While the statutory text clearly does not state that a debt is dischargeable "to the
extent" that repayment would impose an undue hardship, some courts have found the discretion
to partially discharge student loan debt through the application of 11 U.S.C. § 105(a).  *See In re*

15

3. *Application of* <u>Brunner</u> *factors*

Debtors argue that repaying their student loans constitutes an undue hardship, but the record fails to support a judgment in their favor on any of the *Brunner* factors. The first factor requires Debtors to prove that they are unable to maintain a "minimal" standard of living for themselves and their dependents if forced to repay the loans. The first prong of the *Brunner* test requires more than "a showing of tight finances." *In re Faish,* 72 F.3d 298, 306 (3d Cir.1995). "The proper inquiry is 'whether it would be unconscionable to require [the debtor] to take any available steps to earn more income or to reduce her expenses.'" *In re Shankwiler,* 208 B.R. 701, 705 (Bankr. C.D. Cal. 1997) (quoting *Faish,* 72 F.3d at 307). At this point in the proceeding, I have insufficient evidence before me to determine whether it would be appropriate to require Debtors to increase their income or reduce expenses. Therefore, I am unable to enter summary judgment in their favor.

The second *Brunner* factor has been described as " the heart of the *Brunner* test . . . and is often difficult to prove because it requires the debtor to show that she will be unable to pay her

---

*Saxman*, 325 F.3d 1168 (9th Cir. 2003); *Tennessee Student Assistance Corp. v. Hornsby*, 144 F.3d 433 (6th Cir. 1998). The majority of courts have held that the language of § 523(a)(8) allows for a "partial" discharge of student loan debt. *See In re Burton*, 339 B.R. 856, 881 n.42 (Bankr. E.D. Va. 2006)*; In re Kapinos*, 243 B.R. 271 (W.D. Va. 2000) (collecting cases). In *Allen v. Am. Ed. Serv. (In re Allen)*, 329 B.R. 544, 549 - 50 (Bankr. W.D. Pa. 2005), the bankruptcy court held that it could not authorize a debtor to repay a portion of a particular loan and discharge the balance on the basis that repayment would constitute an undue hardship. The Third Circuit, however, has not addressed this issue even though the issues raised on appeal in *Faish* included not only the appropriate test to determine undue hardship, but also whether the partial discharge granted by the bankruptcy court was appropriate. In deciding *Faish*, the Court of Appeals adopted the *Brunner* undue hardship standard and stated further that because Faish had failed to establish undue hardship, "her entire student-loan obligation is nondischargeable." *Faish*, 72 F.3d at 307. The question remains open whether Faish could have obtained a partial discharge if she had otherwise met the *Brunner* test.

16

student loan debt in the future for reasons outside her control." *In re Matthews-Hamad*, 377 B.R. 415, 422-23 (Bankr. M.D. Fla. 2007) (citations omitted). This factor requires a debtor not only to prove that he currently is financially unable to pay his loans but also that he has a total incapacity now and in the future to pay his debts for reasons not within his control. *In re Fish*, 302 B.R. 503, 508 (Bankr. W.D. Pa. 2003) (quoting *Faish,* 72 F.3d at 307). Because there are insufficient facts on the record for me to determine whether Debtors can meet the first *Brunner* factor, I also am unable to determine whether the second factor is met as well.

The final Brunner factor requires Debtors to prove that they have made a good faith effort to repay their student loans. Good faith is measured by a debtor's "efforts to obtain employment, maximize income, and minimize expenses ... [and] encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'" *Matter of Roberson,* 999 F.2d 1132, 1136, (7th Cir. 1993), *quoted in In re O'Hearn*, 339 F.3d 559, 564 (7th Cir. 2003) (other citations omitted); *see also In re Frushour*, 433 F.3d 393, 402 (4th Cir. 2005). While there is some evidence concerning Debtors' payment history on each of the loans at issue, the record is incomplete. According to affidavits submitted on behalf of the lenders, Debtors have not made payments on some student loans, but may have made payments on others. There is evidence on the record that Debtors contacted AES and Loan Science to discuss repayment options, but there is no evidence regarding efforts made to contact USDE or Chase to negotiate more favorable repayment terms. Therefore, the Court is unable to enter judgment in favor of Debtors on the third *Brunner* factor.

17

*(b) The summary judgment motions of Loan Science, Chase and the USDE*[13]

As I determined in reviewing Debtors' motion for summary judgment, there is inadequate evidence in the current record for me to rule in favor of Debtors. Although Debtors bear the ultimate burden to establish the existence of undue hardship, deficiencies in the current record likewise make it impossible for me to find in favor of Defendants. Accordingly, the lenders' motions for summary judgment must be denied. However, there are specific allegations in the lenders' motions for summary judgment that I will address to clarify the issues to be resolved at trial.

To support its motion for summary judgment, Loan Science challenges Debtors' ability to prove that they cannot currently maintain a "minimal standard of living" if forced to repay their loans in full. Loan Science argues that Debtors' schedules of income and expenses support its position that Debtors have additional disposable income they could commit to repaying their student loans. Specifically, the lender asserts that Debtors' housing, food, transportation, and utility expenses (i.e. cell phone and cable) exceed the amounts necessary to maintain a minimal standard of living. If Debtors' expenses in these categories are reduced, Loan Science asserts that they will have "excess cash flow of approximately $1255 a month." (Loan Science Motion for Summary Judgment, Docket Item #26, ¶ 24.)

---

[13]The argument made in the summary judgment motions filed by Loan Science, Chase and USDE are essentially the same – Debtors' income and expenses do not support a finding of undue hardship and with effort they can afford to repay their loans. Since the arguments are similar and since each lender must prove each of the three elements of the *Brunner* test in order to succeed on summary judgment, it is not necessary to separately address each lender's motion. Therefore, in the ensuing discussion, I will address the summary judgment motion of Loan Science as the exemplar for all three motions.

18

As discussed above, the inquiry contemplated by the first *Brunner* factor is not whether Debtors have excess income shown on Amended Schedule J, but whether they have sufficient monthly income to maintain a minimal standard of living while also paying their monthly student loan obligations. *See In re Brunner*, 831 F.2d at 396. An issue not addressed by any of the lenders is whether Debtors could repay *all* student debt if they reduced their expenses to levels advocated by the lenders. The monthly payment to Loan Science alone is $1509.75, and its claim is 40% of the aggregate debt to all student loan lenders as set forth in the proofs of claim. At their deposition, Debtors estimated that their aggregate student loan payments would exceed $4000 per month, and none of the Defendants have disputed this assertion. Therefore, while it may be reasonable to require Debtors to reduce their monthly expenses, it is not clear that a reduction in expenses alone will generate sufficient savings to enable Debtors to service their entire student loan debt while still maintaining a minimal standard of living.

An appropriate Order will be entered.

**By the Court,**

Mary D France
Chief Bankruptcy Judge

Date: March 5, 2012